## TEXAS MILITARY INSTITUTE OF SAN ANTONIO v. SUN OIL CO. et al.

### No. 10208.

Court of Civil Appeals of Texas. San Antonio.

Dec. 15, 1937.

Rehearing Denied Jan. 19, 1938.

C. K. Richards and Cameron & Hardin, all of Edinburg, and Hugh R. Robertson, of San Antonio, for appellant.

Strickland, Ewers & Wilkens, of Mission, and T. L. Foster and J. W. Timmins, both of Dallas, for appellees.

SLATTON, Justice.

This is an appeal from the Ninety-Third judicial district court, in which the appellants complain of the action of the trial court in instructing a verdict against them. Appellants' trial pleadings contained three counts: The first was in trespass to try title; the second, for specific performance; and the third, for damages.

The controversy arose over an oil and gas lease executed by Margaret McAllen Fairbanks, joined pro forma by her husband, to some 7,000 acres of land belonging to her separate estate, dated on or about February 7, 1933. It appears that this oil and gas lease was executed by the Fairbanks and forwarded to the Frost National Bank in San Antonio, Tex., together with a draft in the principal sum of $1,790.43, which sum represented the first quarterly rental payment upon the land at the rate of 25 cents per acre, to be placed in escrow. The oil and gas lease further provided for an additional 25 cents per acre, payable quarterly after date on the 6th day of May, August, November, and February. The escrow agreement provided that the lessee should have ten days' time in which to examine the abstract and to approve the title. The abstract showed some judgment liens existing against the property, aggregating the total sum of a little in excess of $4,000.

The trial court, after the appellants had tendered their evidence in support of their respective causes of action, at the request of appellees directed a verdict for the appellees, against appellants.

We must then view the evidence offered by appellants in its most favorable light, and, if the evidence offered by the appellants is sufficient to sustain either theory of the different causes of action pleaded by the appellants, the action of the trial court in directing a verdict would be erroneous. To support the first count,

that is, of trespass to try title, the evidence of appellants failed to show a title, either legal or equitable, that would entitle them to a recovery. The oil and gas lease executed by the Fairbanks was delivered only in escrow, to be delivered to Condon upon specified conditions; that is, the payment of the draft for the sum of $1,790.43. That sum was never paid by Condon and no offer of payment was ever made until the filing of this suit. The actual tender of this amount of money was made on February 5, 1937. The evidence offered by the appellants showed that Mrs. Fairbanks was willing for a delivery of the oil and gas lease to be made at all times continuously from on or about February 7, 1933, until as late as October 30, 1934, when the husband of Mrs. Fairbanks notified Mr. Condon that he did not want to have any further dealings with him, or, at most, until the execution and delivery of the Sun Oil Company lease on the 5th day of January, 1935. During that period, appellant Condon refused to accept a delivery of the oil and gas lease, and refused to pay the draft for the reason that there were outstanding judgment liens against the property, which, according to the evidence, Mrs. Fairbanks, with the assistance of Condon, was unable to remove. The provisions of the oil and gas lease provided for an additional quarterly payment of 25 cents per acre every three months after the date of said lease. At no time during the period mentioned did the appellants offer to pay any quarterly rental. Nor did they offer to pay such quarterly rentals on the trial of the cause. Appellants say the tender of the first quarterly rental was a sufficient compliance of the conditions of the lease on the grounds that Mrs. Fairbanks had repudiated the lease contract, and since such repudiation the law would not require one to do a useless thing. The weakness of this position lies in the fact that the evidence shows Mrs. Fairbanks was willing to deliver the lease upon a payment of the first quarterly rental during a period when at least four of five additional quarterly rentals would become due, and during such period there is no evidence that Mrs. Fairbanks waived the payment of subsequent rentals. We are of the opinion that the evidence was insufficient to support the count of trespass to try title. Dayle L. Smith Oil Co. et al. v. Griffin, Tex.Civ.App., 104 S.W.2d 167, 169, and authorities there cited.

We come to the consideration of the evidence under the count for specific performance. In the case of Cattell v. Jefferson, 60 App.D.C. 261, 51 F.2d 317, 318, it is said: "Specific performance, being not a matter of right but resting in discretion, will usually be denied against a vendor unable to comply with his contract for lack of title, although his lack of title may result from his own act, or, as here, from his omission to act. * * *. As Justice Gray states the rule in Kennedy v. Hazelton, 128 U.S. [667] 671, 9 S.Ct. 202, 32 L. Ed. 576: 'A court of chancery cannot decree specific performance of an agreement to convey property which has no existence, or to which the defendant has no title.'"

In the present case, there were judgment liens existing against the property covered by the oil and gas lease to the aggregate extent of more than $4,000. There were also outstanding delinquent taxes to the extent of $5,000 or $6,000, as well as an encumbrance about to be placed against the property at the time of the execution of the oil and gas lease. Mrs. Fairbanks was ready and willing to deliver whatever title she had, but Condon was unwilling to accept it. The evidence shows that the appellants never showed a willingness to accept whatever title Mrs. Fairbanks had until the actual trial of this case, which occurred in the early part of February, 1937. We are of the opinion that a court of equity would be powerless, under the case presented, to require Mrs. Fairbanks to deliver to appellant Condon the oil and gas lease clear of the encumbrances hereinbefore described.

There is another reason, we think, that would preclude a specific performance in this case. It is a matter of common knowledge that the value of an oil and gas lease is subject to fluctuations. It is also a matter of common knowledge that an oil and gas lease may be worthless, and within a short period of time become very valuable; or that it may be of great value today, and within a short time become valueless. The escrow agreement provided that the appellant Condon should have ten days in which to make an examination of the title papers, etc. The evidence shows that the primary consideration for the execution of the oil and gas lease by the Fairbanks was to procure rentals. In this situation we do not believe that a court of equity would permit appellant Condon, or his assigns, to wait for a long period of time and speculate on whether it would be profitable for them to take the lease, and after the value of the

lease had been enhanced by proving up the territory, to force a specific performance, that is, a delivery of the lease. See Mandeville & Thompson v. Danciger Oil & Refining Co., 5 Cir., 62 F.2d 130.

The appellee asserts that specific performance will not lie to enforce an executory contract of a married woman to convey her separate estate. As we are of the opinion that the action of the trial court may be supported upon other grounds, we pretermit a discussion of this interesting question.

■ We now test the pleadings and evidence having reference to the third count of the petition, which is an action for damages against Mrs. Fairbanks. The undisputed evidence shows that Mrs. Fairbanks tendered Condon the oil and gas lease which he had contracted to buy. Condon was unwilling to accept the only title which she could deliver. It seems to be the settled law in this state that, where a contract to convey land fails because of the inability of the vendor to deliver a good title, the measure of damage which the vendee may recover for a breach of the contract is the amount he has paid as purchase money, and not the loss of his bargain. Kelly v. Simon, Tex.Civ.App., 262 S.W. 202, and authorities there cited. The evidence shows without dispute that the only consideration paid by Condon was $10, and that was paid on or about the date of the execution of the oil and gas lease, which was on or about February 7, 1933. The only pleading of appellants in their action for damages was for the loss of their bargain. Therefore, there was no pleading which would entitle the appellants to recover their true measure of damage, that is, $10 with interest.

Believing there was no error in the trial court's action in instructing a verdict against appellants, in favor of appellee, the judgment of the trial court is affirmed.

### On Rehearing.

■ Appellant, by an able and earnest motion for rehearing, asks us to make many findings of fact and conclusions of law. It is our understanding that where the trial court has, at the conclusion of the plaintiff's evidence, upon motion of defendant, granted a motion for a directed verdict in favor of the defendant and against the plaintiff, on appeal the evidence is taken as true, and every logical inference is to be indulged in favor of the party against whom the verdict was directed.

■ In our original disposition of this case we tried to apply that rule to the facts. Also, we tried to announce our conclusions of law on such facts in our opinion. There is one matter, however, which we shall discuss a little more in detail; that is, with reference to the count for damages. It appears from the evidence, without dispute, that Mrs. Fairbanks and Condon thought, at the time the lease was executed, that the title was good, but for the lien and delinquent taxes described in the lease. The judgment liens complained of by Condon were recorded before the lease was executed. While the parties had constructive knowledge of their existence, the record shows that they had no knowledge of their existence in fact. In the letter of transmittal to the bank it was stated that Mrs. Fairbanks and Mr. Condon thought the title was good, but that a reasonable time for the examination of the title was to be ten days, and that in the event of any defects Mrs. Fairbanks agreed to use her best efforts, if need be, to assist in getting the title into condition. That she did use her best efforts to remove the judgment liens is shown beyond dispute by the testimony of Condon. Condon was advised that Mrs. Fairbanks had no money and Condon was unsuccessful in his attempts to assist her in raising such money. The last time the matter was discussed between Mrs. Fairbanks and Condon was during June or July, 1934, and from the time of the execution of the lease until that time Condon was unwilling to accept the lease with the title encumbered with the judgment liens.

On the 30th day of October, 1934, the husband of Mrs. Fairbanks advised Condon, on account of his filing an affidavit in the county in which the land was situated, that they did not desire any further business dealings with him. After the receipt of this communication from the Fairbanks, Condon did not communicate with the Fairbanks for a period of about eighteen months, and then through his counsel demanding a delivery of the lease. Mrs. Fairbanks could not give to Condon the title he was willing to receive, on account of the judgment liens. The record failing to show bad faith or fraud on the part of Mrs. Fairbanks, in her being unable to convey merchantable title to the lease to Condon, we are of the opinion that the rule stated by us in our original opinion is the correct one, and that we are not in conflict with Matthewson v. Fluhman, Tex.Com.App., 41 S.W.2d 204,

207. In that case it is said: "Where the vendor acts in bad faith in failing or refusing to convey, or disables himself from conveying, the purchaser's recovery is not limited to the purchase price paid, with interest and expenses, but he is entitled to compensation ror his actual loss, or, as sometimes expressed, damages for the loss of his bargain."

Under the escrow letter there was no time fixed for Mrs. Fairbanks to cure the defects. The law would presume the parties intended a reasonable time. For a period of more than eighteen months Condon was unwilling to accept the title which Mrs. Fairbanks could convey, and during such time Mrs. Fairbanks was unable to cure the defects in the title. We can see no fraud or bad faith on the part of Mrs. Fairbanks in withdrawing the lease and in conveying it to another, some time within three or four months thereafter.

There is another reason, we think, why the action of the trial court, on the count for damages, was correct: while the evidence shows that the value of the lease in question had increased, from the date of its execution to the time of the trial, the extent of such increase is left open to speculation. In other words, there is no evidence in the record before us upon which a jury could intelligently assess the damages of the claimed loss of appellant's bargain.

Believing our original disposition of the cause is correct, the motion for rehearing is overruled.